UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANCIS WOUKOP YOMI,<br><br>                Plaintiff(s),<br>    v.<br><br>CARLOS DEL TORO, et al.,<br><br>                Defendant(s). | CASE NO. C23-5199-KKE<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Francis Woukop Yomi was employed by the United States Navy for 52 days in 2014 as a probationary physical science technician ("PST"), until he was asked to resign in lieu of termination. In this lawsuit that Plaintiff filed against the Defendant Secretary of the Navy ("the Navy"), Plaintiff alleges that his resignation/termination and the Navy's refusal to offer him or hire him for a different position or to promote him constitute discrimination and/or retaliation. Dkt. No. 57. For the reasons explained herein, the Court finds that Plaintiff's claims fail as a matter of law and the Court therefore grants the Navy's motion for summary judgment.

## I.    BACKGROUND

Plaintiff is Black and was born and raised in Cameroon. Dkt. No. 69-1 at 4–5. He moved to the United States as an adult in approximately 2007 and naturalized in 2012. *Id.* at 6, 25. Plaintiff was employed at the Navy's Puget Sound Naval Shipyard and Intermediate Maintenance

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

Facility (the "Shipyard") as a probationary PST from July 7, 2014, to August 28, 2014. Dkt. No. 69-2 at 1.

Fully certified PSTs oversee work on the Navy's nuclear vessels, ensuring that sensitive work is carried out safely and appropriately. Dkt. No. 69-2 at 3. New PSTs are subject to a one-year probation period, which the Navy must "utilize … as fully as possible to determine the fitness of the employee and shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment." 5 C.F.R. § 315.803. Probationary PSTs must complete a demanding training program that includes written, oral, and practical tests. Dkt. No. 69-6 at 4–5, Dkt. No. 69-7 at 5–6; *see generally* Dkt. No. 69-17 (describing job requirements). They first train locally at their shipyard; followed by a six-month training program at the Norfolk Naval Shipyard in Virginia; then a 12-week rotation; and finally oral board examinations to become fully certified. Dkt. No. 69-7 at 5–6. The Navy expended approximately $100,000 per student in the Virginia training program, in 2012. Dkt. No. 69-6 at 12.

Probationary PSTs could be terminated for three reasons: (1) the failure of three topical written, practical, or oral examinations, including makeup examinations; (2) unsatisfactory attendance record or unsatisfactory general on-the-job work performance; or (3) administrative removal for other reasons that prevent the employee from performing as a fully qualified PST. *See* Dkt. No. 69-19 at 3. During the time relevant to this case, the Navy required probationary PSTs to score at least 80% on several tests before they could go on to training in Virginia. Dkt. No. 69-18 at 13.

In the 2013-2015 period, the Shipyard conducted new rounds of hiring for probationary PSTs every few months. Dkt. No. 69-7 at 11. The Shipyard would post large numbers of

"vacancies" across a range of GS grades[1] so that they could hire as many suitable candidates as they could find. Dkt. No. 69-8 at 8–9.

In 2013, Plaintiff applied for, and was found eligible for, a PST position at GS-06. Dkt. No. 69-21 at 4. Plaintiff's interviewers gave him average or above-average scores on some criteria, but low scores for communication, noting that his "[p]oor grasp of English" "allow[ed] for easy miscommunication." Dkt. No. 69-22 at 2–3. Plaintiff was nonetheless offered the position. Dkt. No. 69-7 at 4.

Shortly after Plaintiff applied for the PST position at grade GS-06, he also applied for a PST position at grade GS-09, in March 2014. Dkt. No. 69-28 at 2–8. He was not found eligible at that grade. Dkt. No. 69-25 at 9–13. But as a result of a coding error, Plaintiff received two incorrect automated emails via the Navy's HR system with respect to his GS-09 application: the first contradictorily stated both that his GS-09 "application has been forwarded to the hiring manager" but also that he was "[i]neligible for further consideration for this position and grade" (Dkt. No. 69-26); and the second stated that he had "declined" a GS-09 position (Dkt. No. 69-27). When Plaintiff followed up on these emails, Rachel Burgess, the Shipyard's Radiological Monitoring Division's HR specialist, apologized for the confusion caused by the erroneous emails and explained that Plaintiff had never been selected at GS-09 and was only being offered the position at GS-06. Dkt. No. 69-28 at 6. Plaintiff ultimately accepted the position at GS-06. Dkt. No. 69-2 at 7.

Plaintiff began work at the Shipyard on July 7, 2014. Dkt. No. 69-5 at 3. His immediate superior was supervisory PST Amber Harper, who was responsible for supervising all the PST

---

[1] "The General Schedule (GS) pay scale is one of many pay systems in the federal government. A GS pay grade is a rate of basic pay based on the specific level of work or range of difficulty, responsibility, and qualifications." *Pay*, USAJOBS HELP CENTER, https://help.usajobs.gov/working-in-government/pay (last visited Nov. 21, 2024).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

trainees, including verifying that they took and passed their required tests. Dkt. No. 69-9 at 2–3. His second-level supervisor was John Gerry, the branch head, who had interviewed Plaintiff the previous year. Dkt. No. 69-8 at 2–3. And his third-level supervisor was Susan Cook, the head of the Radiological Monitoring Division, who had decided to hire him. Dkt. No. 69-6 at 2–3.

In June 2014 (after Plaintiff had been hired but before he started working), the Navy opened a new round of hiring for probationary PSTs at grades GS-07 to GS-09. Dkt. No. 69-29. Plaintiff again applied at GS-09—which would represent a three-step promotion from the job he was about to start—and passed the initial eligibility screening performed by an HR specialist, such that his application was forwarded to the selection official. Dkt. No. 69-11 ¶¶ 3–4; *see also* Dkt. Nos. 69-30, 69-31.

Once he started his probationary GS-06 PST job, Plaintiff did well on his initial math and science tests in July 2014, but struggled more and more as his training progressed. Dkt. No. 69-12 ¶ 3. He failed a quiz on August 8, 2014, and failed a written test on August 14, 2014.[2] *Id*. Plaintiff also engaged in disruptive behavior: Plaintiff argued with an examiner about whether he deserved additional points on a math and science exam—a test he had passed with a score of 96%. Dkt. No. 69-3 at 9–10. He admits he repeatedly asked his supervisor and ultimately asked four different people to regrade the written test he failed on August 14, 2014, hoping to avoid retaking it. *Id*. at 4, 7. And he argued with instructors and examiners about the meaning of words used in the exams, such as "background." Dkt. No. 69-2 at 24–25.

Despite these academic setbacks, Plaintiff continued to press for a promotion to GS-09. Shortly after arriving at the Shipyard, he began to ask Harper, his supervisor, about the status of his June 2014 application for a GS-09 position. Dkt. No. 69-9 at 7. Harper eventually referred

---

[2] Plaintiff retook the quiz and passed on August 22, 2014. Dkt. No. 69-12 ¶ 3.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

him to John Gerry, the branch head, who in turn deferred to HR. *Id.*; Dkt. 69-8 at 10–11. In late July 2014, Yomi met with Heather Parrish, an administrator for the Division whose duties included HR, to discuss his desire to move to GS-09. Dkt. No. 69-5 at 7; Dkt. No. 69-7 at 2, 10–11. Parrish was non-committal about Plaintiff's chances of selection for the GS-09 position, telling him that the Navy would need to see how he did in the PST training program. Dkt. No. 69-5 at 7.

After this meeting, however, Yomi told his fellow probationary PSTs Adam Chambers and Daniel Konnoff that he expected to be raised to GS-09 "at any time." Dkt. No. 69-5 at 16. Chambers and Konnoff then also began to ask about having their GS grade raised. *Id.* at 15. Plaintiff and Chambers were both instructed by supervisors to stop discussing their GS grade in the classroom because it was becoming disruptive. Dkt. No. 69-7 at 10–11.

On August 7, 2014, Plaintiff was not selected for the GS-09 position, and neither were Chambers or Konnoff. *See* Dkt. Nos. 69-32, 69-33. On August 19, 2014, Burgess held meetings with Plaintiff, Chambers, and Konnoff to discuss their concerns about their GS grades. Dkt. No. 69-15 at 3–4. Gerry and Parrish were present in Plaintiff's meeting as well. Dkt. No. 69-8 at 10. Plaintiff was upset during this meeting because he had not been selected for the GS-09. *Id.* Although Parrish told him that promotions were ultimately up to the discretion of management (i.e., Cook), Plaintiff insisted that, essentially, because he had passed the eligibility screening and had the requisite education, the Navy should have selected him for the position. Dkt. No. 69-5 at 9–11. At this time Plaintiff also referenced the erroneous email he had received, stating he had declined a GS-09 position. Dkt. No. 69-8 at 10–11. The meeting became argumentative, and Plaintiff threatened to resign. Dkt. No. 69-7 at 10. Plaintiff also claims he said during this meeting that his non-selection for the GS-09 position amounted to discrimination, although Parrish and Gerry deny that. Dkt. No. 69-2 at 4; Dkt. No. 69-7 at 10; Dkt. No. 69-8 at 11.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

The next day, Plaintiff wrote an email directly to Cook complaining about his non-selection, without reference to discrimination. Dkt. No. 69-4 at 2. He again insisted that he was qualified for a GS-09 position and thus should have been selected. *Id.* He demanded an explanation "from an objective criteria point of view, rather than a management discretion point of view." *Id.* He also again threatened to resign because he was "supposed to be" at GS-09. *Id.*

Two days later, not having received a response from Cook, Plaintiff asked Harper if he could speak to Cook. Dkt. No. 69-2 at 20. She said no, and that Cook does not generally speak with PSTs, which Plaintiff took to be an insult. *Id.* Plaintiff testified that Harper told him then that if he continued to ask about why he was not selected for a GS-09 position, he would be terminated, although Harper denies ever saying that. *Id.*; Dkt. No. 69-9 at 7.

On August 25, 2014, the Navy opened another round of hiring for probationary PSTs at grades GS-07 to GS-09. Dkt. No. 69-29. The next day, Plaintiff told Chambers and Konnoff about the new job opening that he had seen online. Dkt. No. 69-2 at 17–18, 21. They told him that they had already seen that opening. *Id.* Plaintiff claims that Chambers said "management" had told him about it, although Chambers stated that he discovered the posting himself. *Id.* at 21; Dkt. No. 69-10 at 6.

Plaintiff and Chambers took two practical exams on August 28, 2014, and Chambers passed one exam but failed the other, while Plaintiff failed both exams. Dkt. No. 69-10 at 6–7; Dkt. No. 69-12 ¶ 3. After failing these two exams, Plaintiff asked Harper if he could retake not just the exams but the classes underlying them, because he admitted, "I forgot a lot from that exam." Dkt. No. 69-1 at 16–17. Harper told him that he could not retake the classes but "maybe" would be able to retake the exams the next week. *Id.* Based on Yomi's performance up to that point, however, Harper believed that he was unlikely to succeed in the PST program. Dkt. No. 69-9 at 8–9. Cook agreed. *Id.*; Dkt. No. 69-6 at 11–12. Cook decided to give Yomi the choice to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

either resign or be terminated, because she knew a termination affects a probationer's ability to apply for future jobs. Dkt. No. 69-6 at 13.

That same day, Harper brought Plaintiff to a meeting in Cook's office. Dkt. No. 69-1 at 16–17. Cook told Plaintiff that he was failing academically and could resign or be terminated, and presented him with paperwork to sign for each choice. *Id*. at 16–19. Plaintiff tried to argue with Cook and Harper about his test scores. *Id*. at 17. He also continued to argue that he should have been hired at GS-09, although Cook pointed out to him that regardless of their incoming GS grade, all new PSTs had to complete the same training program, and Plaintiff was failing it. Dkt. No. 69-6 at 10. As the meeting continued, Plaintiff could not accept the termination/resignation, and Parrish joined the meeting to explain his options in more detail. Dkt. 69-7 at 12.

Plaintiff became increasingly agitated, until Parrish became concerned about safety and called security. Dkt. No. 69-7 at 12. Plaintiff then chose to sign the resignation paperwork and was escorted out. Dkt. No. 69-1 at 24, Dkt. No. 69-7 at 11. Yomi contacted the Navy's EEO Office on September 9, 2014, to allege harassment and discrimination on the bases of race, color, and national origin, and retaliation. Dkt. No. 69-45.

In October 2014, an HR specialist performed the initial eligibility screen for the GS-07 to GS-09 job posting that had opened in late August 2014. Dkt. No. 69-14 ¶ 3. Yomi applied for this position at grades GS-08 and -09. *Id.* The HR specialist decided that Yomi was not eligible at either grade, because he had no graduate coursework directly related to the position and had limited experience in performing radiological control work. *Id.*

Plaintiff continued to pursue his discrimination claims with the EEOC, and in 2022, the EEOC issued a decision affirming an agency administrative judge's finding that Plaintiff had not been subjected to discrimination, reprisal, or a hostile work environment. *See* Dkt. No. 1-1 at 12–19. That decision was affirmed upon reconsideration, and the EEOC indicated that Plaintiff had

the right to file a civil action. *Id.* Plaintiff then filed this action under Title VII, proceeding *pro se*, and the Navy has moved for summary judgment.

After considering the parties' briefing on that motion, the oral argument held on November 18, 2024, and the remainder of the record, the Court will grant the Navy's motion for the following reasons.

## II.     ANALYSIS

### A.     Legal Standards on Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims[,]" so that "factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986). In resolving a motion for summary judgment, the court considers "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Where the nonmoving party opposing summary judgment would have the burden of proof at trial, the moving party need only show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

**B.      The Navy Is Entitled to Judgment as a Matter of Law on Plaintiff's Claims of Discrimination.**

A plaintiff claiming employment discrimination under Title VII may establish their *prima facie* case by presenting direct or circumstantial evidence of animus against them or the protected class to which they belong. *Opara v. Yellen*, 57 F.4th 709, 722 (9th Cir. 2023). Direct evidence is "evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005) (cleaned up). It "typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Id.*

In the absence of evidence of animus, a plaintiff must turn to the *McDonnell Douglas* burden-shifting framework. *See Opara*, 57 F.4th at 721–22, 724–25 (discussing and applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To establish a *prima facie* case of discrimination under the *McDonnell Douglas* analysis, the plaintiff must show: (1) they belonged to a protected class; (2) they were performing their job satisfactorily; (3) they were subjected to an adverse employment action; and (4) similarly situated employees not in their protected class were treated more favorably. *Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1003 (9th Cir. 2019).

Under the *McDonnell Douglas* framework, if the plaintiff can make a *prima facie* case, then the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The defendant's burden "is one of production, not persuasion, and involves no credibility assessment." *Opara*, 57 F.4th at 726 (cleaned up). Thus, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Burdine*, 450 U.S. at 253).

If the defendant establishes a legitimate reason for their actions, the burden shifts back to the plaintiff to show that the defendant's claimed reason is a mere pretext for discrimination. *Burdine*, 450 U.S. at 253. Where a plaintiff relies on circumstantial evidence to show pretext, he must "put forward specific and substantial evidence challenging the credibility of the employer's motives." *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1282 (9th Cir. 2017) (quoting *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004)).

In this case, Plaintiff raises several claims of discrimination based on different Navy actions, and has not identified any direct or circumstantial evidence of animus with respect to any of them. The Navy disputes whether Plaintiff can establish a *prima facie* case for any of his discrimination claims, but for purposes of resolving the summary judgment motion, unless otherwise noted, the Court assumes without deciding that Plaintiff can make those showings. The Court will focus on whether the Navy has articulated a sufficient legitimate, non-discriminatory justification for its actions, and if so, whether Plaintiff has shown that the reason is pretextual.

    1. *The Navy Has Provided a Legitimate Reason for Taking the Actions at Issue.*

Plaintiff alleges that various actions were discriminatory, namely the Navy's decision to demand his resignation or termination, the Navy's failure to move him to a different position in lieu of resignation/termination, the Navy's refusal to hire him for a GS-09 position, and the Navy's refusal to let him retake exams he failed. Assuming without deciding that Plaintiff could establish a *prima facie* case of discrimination for these actions, the Navy has amply supported these decisions with legitimate reasons.

Specifically, the Navy has cited Plaintiff's failing test scores as a legitimate basis for his termination, along with behavioral concerns that required intervention. Either of these would be legitimate reasons to terminate Plaintiff under the terms of his probationary employment contract. *See* Dkt. No. 69-19 at 3. The Navy is required to use the probationary period to determine whether

an employee is qualified and to terminate an employee that fails to demonstrate his or her qualifications. *See* 5 C.F.R. § 315.803(a).

Plaintiff's failing grades and behavioral concerns also constitute a legitimate reason for the Navy to not offer him another position at the Shipyard, and to refuse to hire him for a GS-09 position. Plaintiff essentially argues that because he has not received an explanation for the Navy's decisions that he can accept, Navy decisionmakers must have been motivated by discriminatory animus. *See, e.g.*, Dkt. No. 79 at 2–3. But Plaintiff's subjective belief that Navy decisionmakers were motivated by discrimination does not constitute the direct or circumstantial evidence needed to show pretext. *See Mayes*, 846 F.3d at 1280 ("An employee can prove pretext either: (1) directly, by showing that unlawful discrimination more likely motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." (cleaned up)).

Plaintiff also cites Parrish's "NA" answers in part of her declaration as evidence that she did not deny a discriminatory animus, but the portion of her declaration that he cites pertains to a hiring process that she was not part of. *See* Dkt. No. 69-7 at 8–10. When Parrish was asked whether Plaintiff's protected characteristics were a motivating factor in the actions that she did participate in, she denied it. *See, e.g.*, *id*. at 11–13.

And although Plaintiff believes he should have been provided more opportunities to retake tests, he has not identified evidence suggesting that the decision not to allow him to retake tests was based on a protected characteristic. *See, e.g.*, Dkt. No. 69-6 at 12. The decision to allow tests to be retaken is discretionary and not automatic, and the fact that others may have been permitted to retake more tests than Plaintiff does not, in itself, suggest a discriminatory animus. *See, e.g.*, Dkt. No. 79 at 9. Cook explained that decisions to permit retakes were made based on an evaluation of the first test results and why the probationary PST failed it: if the failure revealed

problems with foundational skills, then the probationary PST may not be permitted to retake the test. *See* Dkt. No. 69-6 at 12. Cook also explained that although Plaintiff requested an opportunity to retake tests in lieu of resigning, she believed that his "multiple opportunities" up to that point suggested he was not going to be successful in the program. *Id*. Plaintiff has not shown that other probationary PSTs failed the same tests for reasons similar to Plaintiff, and were nonetheless afforded the opportunity to retake them.

The Navy has provided a legitimate, non-discriminatory rationale to support Plaintiff's resignation/termination, and Plaintiff has not identified evidence showing that the Navy's justifications for the adverse employment actions taken against Plaintiff were pretextual. The Navy is therefore entitled to judgment as a matter of law on these claims.

    *2.    The Navy's Failure to Notify Plaintiff About Job Postings Is Not an Actionable Adverse Employment Action.*

Plaintiff also claims that the Navy's failure to email him other Shipyard job postings amounts to discrimination.

In the absence of evidence of animus, this claim is again subject to the *McDonnell Douglas* burden-shifting framework, and a plaintiff must show the same four elements of a *prima facie* case of discrimination: (1) the plaintiff belongs to a protected class; (2) they were performing their job satisfactorily; (3) they were subjected to an adverse employment action; and (4) similarly situated employees not in their protected class were treated more favorably.

Here, the Navy focuses on the third element, contending that a failure to send Plaintiff job postings is not an adverse employment action because such actions must "materially affect the compensation, terms, conditions, or privileges of … employment." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000).

Plaintiff does not address this argument or otherwise explain how the distribution of a job posting could have impacted his existing employment. Accordingly, he has not met his burden to show a *prima facie* case of discrimination based on the Navy's failure to email him job postings.

**C.    The Navy is Entitled to Judgment as a Matter of Law on Plaintiff's Claim of Retaliation.**

Plaintiff brings a claim for retaliation, arguing that he was terminated in August 2014 and not re-hired in October 2014 because he had accused his supervisors of racial discrimination in an August 19, 2014 meeting, and contacted the EEOC in September 2014.

To make out a *prima facie* case of retaliation under Title VII, Plaintiff must show that "1) he engaged in protected activity; 2) he suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision[.]" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). Courts analyze retaliation claims under the *McDonnell Douglas* burden-shifting framework. *Id.* Thus, as with Plaintiff's discrimination claims, if he can establish a *prima facie* case of retaliation, then the Navy has the burden of production to articulate a legitimate, non-retaliatory reason for the challenged action—but the burden of persuasion at all times remains with Plaintiff. *See Opara*, 57 F.4th at 726. If the Navy meets its burden of production, Plaintiff must show that the articulated reason is a pretext for retaliation. *Id.*

The Navy concedes that Plaintiff can make the requisite showings as to the first two elements, because he claims to have made a discrimination accusation in a meeting on August 19, 2014, before he was terminated on August 28, 2014, and not re-hired in October 2014. But the Navy disputes whether Plaintiff can establish a causal link between the protected activity (discrimination accusation and EEOC complaint) and the adverse employment actions (the demand to resign or be terminated, and the decision not to hire). The Navy contends that neither

the person who asked him to resign or be terminated on August 28, 2014, nor the person that decided not to re-hire him in October 2014, knew that he had raised the issue of discrimination in a meeting outside of their presence or contacted the EEOC. Dkt. No. 68 at 25–26.

Plaintiff does not squarely address the causation argument in his opposition briefing, but when asked about the issue in his deposition, he explained that it did not matter whether the decisionmakers knew of his protected activity, because the Navy knew about his protected activity and his suit is against the Navy (as opposed to individual decisionmakers). Dkt. No. 69-5 at 30–34. Plaintiff cites no authority indicating that the knowledge of anyone in an agency should be imputed to everyone in the agency, and the Court is not aware of any such authority. In the absence of any evidence suggesting that the decisionmakers accused of retaliation knew of Plaintiff's protected activity, Plaintiff's retaliation claims must fail. *See, e.g.*, *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F. 3d 1185, 1197 (9th Cir. 2003) ("[T]he plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity.").

### III.   CONCLUSION

For these reasons, the Court GRANTS Defendant's motion. Dkt. No. 68.

Dated this 26th day of November, 2024.

Kymberly K. Evanson
United States District Judge